Ardis KNUTZEN, Plaintiff,

v.

Melinda NELSON, et al.,
Plaintiffs-Intervenors,

v.

EBEN EZER LUTHERAN HOUSING
CENTER, Defendant.

Civ. A. No. 84–C–753.

United States District Court,
D. Colorado.

Sept. 20, 1985.

Glenn Meyers, Denver, Colo., Jacquelyn Higinbotham, Fort Morgan, Colo., for plaintiff.

Neil Quigley, Denver, Colo., Helena Schultz, Brush, Colo., for defendant.

## ORDER

CARRIGAN, District Judge.

Before me are various motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), for summary judgment and partial summary judgment pursuant to Fed.R. Civ.P. 56, and for class certification pursuant to Fed.R.Civ.P. 23. Jurisdiction is based on 28 U.S.C. § 1331 (1982). The parties have briefed the issues, and oral argument would not assist in resolving them.

### I. Introduction.

#### A. Parties and Claims for Relief.

Plaintiffs, Ardis Knutzen, Melinda Nelson, Dorotea Herrera, and Dolly Wagner, are handicapped individuals who seek admission to the defendants' housing project. Defendants are the owners, managers, and directors of the Tabor Apartments (the "project"), a thirty-three unit building located in Brush, Colorado. Construction of the Tabor Apartments was financed through a loan administered by the Department of Housing and Urban Development ("HUD") pursuant to § 202 of the National Housing Act, 12 U.S.C. § 1701q (1982).

Plaintiffs complain that they were illegally excluded by the defendants from residing in the Tabor Apartments because of their respective handicaps. Two of the four plaintiffs, Knutzen and Nelson, were admitted as residents at the project but subsequently vacated their apartments, allegedly because of the treatment they received from certain of the defendants. All of the plaintiffs seek the opportunity to live at the project.

Plaintiffs assert claims for relief (not all of which are common to each of their complaints) based upon alleged: 1) violations of their rights to equal protection and due process under the Fifth Amendment to the United States Constitution; 2) violations of their rights to free exercise of religion under the First Amendment to the United States Constitution; 3) violations of § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1982); and 4) violations of the Fair Housing Act, 42 U.S.C. § 3601 et seq. (1982). They also assert various pendent state law theories, including breach of a covenant of quiet enjoyment, breach of contract, slander and defamation, and outrageous conduct.

Plaintiffs seek declaratory and injunctive relief: 1) enjoining the defendants from engaging in the allegedly unlawful conduct; 2) enjoining the defendants from using any practice, policy, or procedure that has the purpose or effect of discriminating against any applicant on the basis of his or her handicap or religious affiliation; 3) ordering the defendants to commence an outreach program to fill vacancies at the Tabor Apartments with non-elderly handicapped persons until such time as those persons are proportionally represented at the project; 4) ordering the defendants to revise their tenant selection rules and policies and to submit the proposed rules and policies to the court; and 5) ordering the appointment of an "impartial master" at the defendants' expense to review tenant selection procedures and to be consulted by the defendants before they act on any application for admission. Plaintiffs also seek compensatory and punitive damages.

#### B. Procedural History.

Plaintiff Ardis Knutzen initially filed her complaint on April 6, 1984. On that same date, I granted a temporary restraining order ordering the defendants to hold one apartment open for her until further order of the Court. On April 16, 1984, I approved a stipulation by the parties that the defendants would continue obeying the restraining order pending a decision by this Court on Knutzen's application for residency.

Since that time, I have allowed Melinda Nelson, Dorotea Herrera, and Dolly Wagner to intervene as plaintiffs. At a hearing on April 19, 1985, I ordered the parties to file motions for summary judgment.

Before me are the following motions: 1) motions to dismiss each of the intervenor's complaints; 2) a motion for class certification; 3) motions to dismiss all class action claims; 4) a motion by the defendants for summary judgment; and 5) a motion by the plaintiffs for partial summary judgment. In light of my disposition of the summary judgment motions, I need not address the others.

### C. *Undisputed Facts.*

The Eben Ezer Lutheran Housing Center was incorporated in 1982 with the intent of creating a housing project for the elderly and physically handicapped with federal funds obtained under § 202 of the National Housing Act, 12 U.S.C. § 1701q (1982). After the project was commenced, the defendants submitted to HUD their proposed tenant selection criteria, as required under 24 C.F.R. § 277.8. These criteria were initially rejected because they specified that only the elderly and the physically handicapped would be considered for residency. The local HUD office took the position that all handicapped persons, including the chronically mentally ill and the developmentally disabled, were eligible to occupy the project. Defendants did as advised by HUD and accepted tenants with handicaps that were not physical. During this period of time, the defendants admitted Knutzen and Nelson. Nelson resided in the project until August, 1984, and Knutzen stayed until September, 1984. Dorotea Herrera applied for admission in July, 1984. She never moved into the project; the parties dispute the reasons why she did not. Dolly Wagner applied for admission in February, 1984. Her application was denied, allegedly on the grounds that she had problems living in such a project and because she gave incomplete and evasive answers on her application form.

In late 1984, the local HUD office apparently reversed its position with regard to who was eligible to occupy the Tabor Apartments. By letter dated January 2, 1985, Mr. Larry Sidebottom, Chief of the Loan Management Branch of the Denver Regional Office of HUD stated:

"This Office concurs with your position that the Tabor Apartments have consistently requested that the project be permitted to serve only the elderly or physically handicapped (mobility impaired) persons in residency. We also accept your statement that the project does not have the expertise or facilities to serve the developmentally disabled and the chronically mentally ill.

In view of the project's request and its limited expertise and facilities, we will approve changes to paragraph C of the Admissions Policies and Procedures submitted with your letter of December 3, 1984, to exclude mentally impaired and developmentally disabled persons."

In order to apply for an apartment in the project, each plaintiff was required to fill out an application form. Under Section Five of that form, entitled "Emergency Notification," they were asked, among other things, to answer the questions, "Member of what church" and "Pastor's name (minister, priest, rabbi.)" Completion of this section was not a prerequisite to admission, and at least two of the plaintiffs, Nelson and Herrera, left this section blank.

### II. *Motions for Summary Judgment and Partial Summary Judgment.*

#### A. *The Statutory Scheme of § 202.*

Congress initially enacted § 202 of the National Housing Act, 12 U.S.C. § 1701q (1982), in response to the need for housing for the elderly. Subsequent amendments have expanded the statute's scope "to provide housing and related facilities for elderly or handicapped families." 12 U.S.C. § 1701q(a)(1) (1982). The statute functions as follows:

"[S]ection 202 of the Housing Act of 1959, 12 U.S.C. § 1701q (1976) allows HUD to make 3% loans for 50 year terms

to eligible developers to provide housing facilities for elderly or handicapped families with inadequate income to pay private market housing rentals. To start the program, Congress set up a revolving fund, *id.* at § 1701q(a)(4), which depends upon repayment of mortgages or Congressional appropriations for its continued success. Section 202 makes money available for mortgages which is otherwise unavailable. *Id.* at section 1701q(a)(2)(A). In order to assure that section 202 objectives are met, HUD requires an applicant to enter into a regulatory agreement providing that the Secretary of HUD shall establish rental levels and tenant eligibility." *City of Boston v. Harris,* 619 F.2d 87, 89–90 (1st Cir.1980). (footnotes omitted.)

Under § 202 (d)(4):

"The term 'elderly or handicapped families' means families which consist of two or more persons and the head of which (or his spouse) is sixty-two years of age or over or is handicapped, and such term also means a single person who is sixty-two years of age or over or is handicapped. A person shall be considered handicapped if such person is determined, pursuant to regulations issued by the Secretary, to have an impairment which (A) is expected to be of long-continued and indefinite duration, (B) substantially impedes his ability to live independently, and (C) is of such a nature that such ability could be improved by more suitable housing conditions. A person shall also be considered handicapped if such person is a developmentally disabled individual as defined in section 102(5) of the Developmental Disabilities Services and Facilities Construction Amendments of 1950. The Secretary shall prescribe such regulations as may be necessary to prevent abuse in determining, under the definitions contained in this paragraph, the elegibility of families and persons for admission to and occupancy of housing constructed with assistance under this section."

Pursuant to the authority granted to the Secretary under this section, HUD has interpreted the statute to delineate four separate categories of persons who are eligible to receive funding under a § 202 program: the elderly, the physically handicapped, the chronically mentally ill, and the developmentally disabled. *See* "Section 202 Direct Loan Program for Housing for the Elderly or Handicapped Processing Handbook" (HUD March, 1983) ("Handbook"), para. 1–5 b through e.

Section 202 is not merely a housing subsidy for eligible tenants. Rather, it is intended to provide housing and services to eligible occupants, as is made clear by § 202(f) which states:

"In carrying out the provisions of this section, the Secretary shall seek to assure, pursuant to applicable regulations, that housing and related facilities assisted under this section will be in appropriate support of, and supported by, applicable State and local plans which respond to Federal program requirements by providing an assured range of necessary services for individuals occupying such housing (which services may include, among others, health (including adult day health services), continuing education, welfare, informational, recreational, homemaker, counseling, and referral services, transportation where necessary to facilitate access to social services, and services designed to encourage and assist recipients to use the services and facilities available to them)...." 12 U.S.C. § 1701q(f) (1982).

While § 202 requires that a project provide services to its occupants, those services are not funded by HUD. Under § 202(a)(3), a loan may not exceed the "total development cost" of a project. That term is defined in § 202(d)(3) to include only costs of land, construction, and "movables" necessary to the basic operation of the project.

To receive funds under § 202, a developer must first apply to HUD. The application must contain "A narrative description of the anticipated occupancy (elderly

and/or handicapped [physically handicapped or developmentally disabled, i.e., mentally retarded, cerebral palsy, or epilepsy.])" 24 C.F.R. § 885.210(a)(5). The application must also describe the "special amenities or features" the project will provide. 24 C.F.R. § 885.210(a)(4)(iv). The regulations do not state that any particular services must be provided. However, funding is awarded on a competitive basis, and those applicants with experience in providing services for the group proposed to be served are given higher priority. *See* Handbook, para. 4–48.

The statute does not directly address whether each § 202 project must provide housing for all four eligible groups. The disjunctive language, however, suggests that a project may be targeted for a particular group. ("[T]he Secretary may make loans ... for the provision of ... housing ... for elderly *or* handicapped families...." 12 U.S.C. § 1701q(a)(1) (1982) (emphasis added)). In addition, at least two of the provisions of § 202 refer to housing for specific groups. 12 U.S.C. § 1701q(k)(2) (1982) ("The Secretary shall encourage the provision of small and scattered site group homes and independent living facilities for nonelderly handicapped persons and families"); 12 U.S.C. § 1701q(h) (1982). HUD has interpreted the statute in this manner and does not require each project to serve all eligible groups. *See,* e.g., 24 C.F.R. 885.210(a)(22) and (23); 24 C.F.R. § 885.225(a)(1). *See also* Handbook, para 4–48.

### B. *Statutory Claims*
#### 1. *Violation of § 504 of the Rehabilitation Act.*

The Rehabilitation Act of 1973 declares: "No otherwise qualified handicapped individual ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794 (1982).

█ It is clear that § 504 provides a private cause of action for declaratory and injunctive relief. *Pushkin v. Regents of the University of Colorado,* 658 F.2d 1372 (10th Cir.1981). The elements of a § 504 claim are as follows:

"In order to make out a case based on a violation of § 504 a plaintiff must prove (1) that she is a 'handicapped person' under the Act, (2) that she is 'otherwise qualified' for the position [service or benefit] sought, (3) that she is being excluded from the position [service or benefit] solely by reason of her handicap, and (4) that the position [service or benefit] exists as part of a program or activity receiving federal financial assistance." *Doe v. New York University,* 666 F.2d 761, 774–75 (2d Cir.1981).

The parties admit, for the purposes of this motion, that the plaintiffs satisfy the first and fourth elements of the above test. The issue, then, is whether they are "otherwise qualified" for occupancy at the Tabor Apartments and whether they have been excluded solely by reason of their respective handicaps. "The two factors are interrelated, since if the individual is not otherwise qualified he cannot be said to have been rejected solely because of his handicap." *Pushkin,* 658 F.2d at 1385.

An "otherwise qualified" individual is "one who is able to meet all of a program's requirements in spite of his handicap." *Southeastern Community College v. Davis,* 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979). Defendants argue that the limitation of the project to only two of the four potentially eligible groups is consistent with the statute and entirely lawful. Therefore, they argue, because the project is limited to the elderly and the physically handicapped, the plaintiffs cannot meet all of the program's requirements in spite of their respective handicaps. Specifically, they do not meet the requirement of being either elderly or physically handicapped. Therefore, argue the defendants, the plaintiffs are not "otherwise qualified" for occupancy in the project and thus they have not been excluded because of their

handicaps but only because they don't have a type of handicap that would qualify them for occupancy.

Plaintiffs argue, on the other hand, that it was not the intent of Congress to segregate the four groups into separate projects, and that § 202 does not support the defendants' practice of excluding certain groups. No elderly or handicapped person, the plaintiffs argue, was intended to be categorically excluded from any § 202 project, and the only relevant consideration is whether the project provides services which meet the plaintiffs' needs. Plaintiffs point to several services offered at the Tabor Apartments which they claim fulfill their needs, such as organized social functions, emergency pull cords in each unit, easy access to transportation, and the presence of a manager and assistant manager to help tenants fill out forms. Since these services improve their independent living capacities, the plaintiffs contend, they cannot be categorically excluded from this § 202 project.

As previously mentioned, the statute is not entirely clear on whether Congress intended that certain § 202 projects may be reserved exclusively for less than all of the eligible groups, although certain statutory language does support this conclusion. It is clear, however, that HUD has adopted this interpretation of the statute. Construction of a statute by the agency charged with its administration is entitled to deference. *Morrison-Knudsen Construction Co. v. Director, Office of Workers' Compensation Programs, United States Department of Labor*, 461 U.S. 624, 103 S.Ct. 2045, 76 L.Ed.2d 194 (1983), *United States v. Clark*, 454 U.S. 555, 102 S.Ct. 805, 70 L.Ed.2d 768 (1982). I find and conclude that the limitation of § 202 projects to particular groups of eligible persons is consistent with the statute and with Congress's intent.

Limitation of a project to selected groups clearly has a reasonable purpose and a reasonable factual basis. As a general proposition, it cannot be denied that each of the four eligible groups has different needs. The elderly may have no need for specialized on-site counseling services which might be of substantial benefit to the chronically mentally ill. On the other hand, the chronically mentally ill may have no need for certain physical health care services which might be extremely valuable to the elderly. It is perfectly rational, therefore, to target a particular group and provide those services that, in general, are useful to that group. Plaintiffs virtually admit as much in their brief when they state that, "The situation might be different if the plaintiffs were, for example, severely retarded persons who required a variety of special services such as speech and learning therapy." Brief in Support of Plaintiffs' Motion for Partial Summary Judgment at 19.

Plaintiffs would have me rule that if the services provided at a § 202 project are useful to any group other than those targeted, *i.e.*, if the services would help members of any other group to live more independently, then that group is entitled to occupy that project. Consideration of the consequences of such a ruling, however, reveals that it would be unworkable and would undermine the purposes behind § 202.

If any person from any of the four eligible groups were entitled to occupy any § 202 project merely by demonstrating that the services provided would improve that person's ability to live independently, the likely result would be that services would be underutilized. For example, a project for the developmentally disabled and the chronically mentally ill might provide specialized counseling services designed to meet the particular needs of those groups. If any elderly person were allowed to occupy space in that project, those persons who could benefit most from those services would be displaced. Such a result is far from unlikely because most § 202 projects (including this one) receive rent subsidies under § 8 of the United States Housing Act of 1937, 42 U.S.C. § 1408 (1982), making them cheaper to live in than non-federally funded projects.

Furthermore, were I to adopt the plaintiffs' position, I would have to address the issue of how to determine whether the services provided would improve the plaintiffs' ability to live independently. Surely a mere allegation to that effect is insufficient, because with the § 8 rent subsidies, virtually every member of an eligible group would have an incentive to so allege. Therefore, that factual determination would have to be made on a case by case basis, either by HUD or by the courts. Such a result is clearly unworkable. Neither body is equipped to supervise every tenant application to a § 202 project.

Plaintiffs have cited the case of *Edge v. Pierce*, No. 82–51 (D.N.J. May 22, 1984) in which the court denied summary judgment in a similar case stating, "there is a question of fact whether the needs of the plaintiffs could be served by the existing programs at the [§ 202 projects] rendering them qualified to live in those complexes." Slip. op. at 22. For the reasons stated above, I decline to follow this analysis. I find and conclude that the plaintiffs are not entitled to have this court decide whether their needs could be served at the Tabor Apartments. HUD has the authority to limit a § 202 project to less than all eligible groups.

■ A further inquiry is suggested by the Supreme Court in *Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979). There, the Court stated, in dictum, that an individual may be "otherwise qualified" without meeting all of the program's requirements if the refusal to modify the program to accommodate the handicapped individual would be "unreasonable and discriminatory." *Id.* at 413, 99 S.Ct. at 2370. The Third Circuit has expanded this concept into the following test:

"A handicapped individual who cannot meet all of a program's requirements is not otherwise qualified if there is a factual basis in the record reasonably demonstrating that accommodating that individual would require either a modification of the essential nature of the program, or

impose an undue burden on the recipient of federal funds." *Strathie v. Department of Transportation*, 716 F.2d 227, 231 (3rd Cir.1983).

In *Edge v. Pierce, supra,* the court stated, "if the plaintiffs are found to not meet the requirements of those programs, the court would have to consider whether the programs could be modified to accommodate the plaintiffs without affecting the essential nature of the programs or burdening HUD unduly." Slip. Op. at 22–23.

I conclude that, in this case, ordering HUD to accommodate the plaintiffs would require a modification of the essential nature of the § 202 program. HUD has already determined that the essential nature of the § 202 program requires that different eligible groups be provided with different services. As previously explained, deference to the agency is appropriate in this case. There is no room for inquiry into whether HUD could modify the § 202 program to provide housing for all four eligible groups at each § 202 project.

For the foregoing reasons, I find and conclude that the defendants' motion for summary judgment on the plaintiffs' claim for violation of § 504 should be granted.

2. *Violation of § 804 of the Fair Housing Act.*

Section 804 of the Fair Housing Act, 42 U.S.C. § 3604 (1982), declares:

"[I]t shall be unlawful—(a) To refuse to ... rent after the making of a bona fide offer, or to refuse to negotiate for the ... rental of, or otherwise make unavailable or deny, a dwelling to any person because of ... religion."

■ Plaintiffs have alleged that the section of the defendants' application form which requests information on church affiliation amounts to a violation of this statute. Suit is authorized under § 812 of the Act, 42 U.S.C. § 3612 (1982) which states, "The rights granted by section ... 804 ... may be enforced by civil actions in appropriate United States district courts." Exhaustion of administrative remedies is not a prerequisite to a § 812 action. *Gladstone, Real-*

*tors v. Village of Bellwood*, 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979).

■ Plaintiffs have offered no evidence that the defendants' refusal to rent to them was in any way affected by the plaintiffs' religious affiliations. It is undisputed that at least two of the plaintiffs did not fill out the section of the application form that requested this information. It is likewise undisputed that one of these two plaintiffs was admitted to the project. The information on religious affiliation was sought for a reasonable, secular purpose, namely, to allow the managers of the project to notify a tenant's clergyman in the event of death or serious illness.

Furthermore, as explained above, the defendants were entitled to exclude the plaintiffs because they were not members of the targeted group, *i.e.* the elderly or physically handicapped. Therefore, any discrimination based on religion was not the cause-in-fact of the plaintiffs' exclusion from the Tabor Apartments. Defendants motion for summary judgment on this claim is granted.

### C. *Constitutional Claims.*

#### 1. *Violation of Equal Protection.*

■ Plaintiffs argue that disparate treatment of the chronically mentally ill and the developmentally disabled violates their equal protection rights secured by the due process clause of the Fifth Amendment to the United States Constitution. The Supreme Court has recently stated that disparate treatment of the handicapped is to be reviewed under a rational relationship test, not heightened scrutiny. *City of Cleburne, Texas v. Cleburne Living Center, Inc.*, —— U.S. ——, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). The classification in this case clearly meets this standard. The § 202 program is rationally related to the legitimate governmental interest in affording housing which is tailored to the distinct and varied needs of the elderly and the handicapped. Therefore, the defendants' motion for summary judgment on this claim is granted.

#### 2. *Violation of Due Process.*

The threshhold issue in a claim for violation of the due process clause of the fifth amendment is whether there is a deprivation of any property right. As stated above, the plaintiffs in this case have not shown that they have any right to live in the defendants' project. Therefore, they have not been deprived of any property right. Defendants' motion for summary judgment on this claim is granted.

#### 3. *Violation of the right to free exercise of religion.*

For the reasons stated in part IIB2, *supra*, the plaintiffs have failed to show that the practices of the defendants infringed on their First Amendment rights to free exercise of religion. Therefore, summary judgment on this claim is granted.

### III. *Pendent State Claims.*

For the foregoing reasons, the defendants are entitled to summary judgment on all federal claims for relief. Although under *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) I have discretion to hear the remaining state claims, I decline to do so in this case. Therefore, it is ordered that the pendent state claims are dismissed without prejudice.

Accordingly, it is ordered that the defendants' motion for summary judgment is granted and the plaintiffs' motion for partial summary judgment is denied. The plaintiffs' claims for violation of 29 U.S.C. § 794 (1982), 42 U.S.C. § 3601 *et seq.* (1982), the due process clause, the equal protection clause, and the first amendment are all dismissed with prejudice. All remaining state claims are dismissed without prejudice. The action and complaint in this case are dismissed.