**Ardis KNUTZEN, individually and as representative of persons similarly situated, Plaintiff/Appellant,**

**and**

**Melinda Nelson and Dorotea Herrera, individually and as representatives of persons similarly situated, Plaintiffs-Intervenors/Appellants,**

**v.**

**EBEN EZER LUTHERAN HOUSING CENTER, a Colorado corporation, Ruth Sagel, Barbara Trute, John Reffell, Robert Nelson, Richard Peterson, Lew Meissner, Harold Brokering, John Elling, all members of the Board of Directors of the Eben Ezer Lutheran Housing Center, Helen Herrboldt, Assistant Managing Agent of Tabor Apartments, Robert Herrboldt, Managing Agent of Tabor Apartments, Defendants/Appellees.**

No. 85–2674.

United States Court of Appeals,
Tenth Circuit.

April 6, 1987.

Glenn Meyers, Colorado Rural Legal Services (Jacquie Higinbotham, Colorado Rural Legal Services, Fort Morgan, Colo., with him on briefs), Denver, Colo., for plaintiffs-appellants.

Neil Quigley, Quigley & Ross (Helena Schultz, Brandenburg & Schultz, Brush, Colo., with him on briefs), Denver, Colo., for defendants-appellees.

Catherine M. Bishop, Nat. Housing Law Project, Berkeley, Cal., amicus curiae in support of plaintiffs-appellants.

Suzanne M. Weiss, American Ass'n of Homes for the Aging, Washington, D.C., amicus curiae in support of defendants-appellees.

Before HOLLOWAY, Chief Judge, and ANDERSON, Circuit Judge, and BRIMMER, District Judge.[1]

1. The Honorable Clarence A. Brimmer, Chief U.S. District Judge for the District of Wyoming, sitting by designation.

BRIMMER, Chief District Judge.

This is an appeal from a judgment of the United States District Court for the District of Colorado granting the defendants' motion for summary judgment, denying the plaintiffs' motion for partial summary judgment, and holding that a federally funded housing project under § 202 of the Housing Act of 1959, 12 U.S.C. § 1701q, may consider for admission only one or some of the four categories of persons eligible for benefits provided by § 202, where the needs of those considered for admission differ from the needs of those excluded. 617 F.Supp. 977.

Appellants argue that they are non-elderly mentally impaired and developmentally disabled adults who are eligible for residency in § 202 housing projects. They claim that they are "high functioning" handicapped individuals who are capable of living independently with a minimal amount of services and that, in particular, they are capable of benefitting from the services provided, while living independently, in the appellees' housing project. Appellants contend that appellees' tenant selection criteria, which makes the project available to the elderly and the mobility impaired and categorically excludes from the project the mentally impaired and developmentally disabled, is not authorized by § 202, constitutes unlawful discrimination in violation of § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and violates their rights to equal protection under the Fourteenth Amendment. They further argue that memoranda by assistant secretaries for Housing in the Department of Housing and Urban Development ("HUD") which specifically sanction serving less than all of the eligible groups under § 202 are void for failure to comply with the publishing requirements of the Administrative Procedure Act, ("APA"), 5 U.S.C. §§ 552, 553. They seek, *inter alia,* declaratory and injunctive relief which would end the appellees' categorical exclusion of them from the housing project in question.

The appellees argue, for the first time, on appeal, that this Court lacks jurisdiction to consider the merits of the claims herein because the appellants' claims are moot and because HUD is a necessary party which has not yet been joined.

We hold that the appellees' categorical exclusion of all but the elderly and the mobility impaired is authorized by § 202, that it does not discriminate against the handicapped in violation of § 504 of the Rehabilitation Act, that it does not violate the appellants' rights to equal protection under the Fourteenth Amendment, and that HUD's failure to publish memoranda in question did not violate the APA. We additionally reject the appellees' jurisdictional challenge and hold that the appellants' claims are not moot and that HUD is not a necessary party. We are, thus, substantially in agreement with the opinion of the district court and for the reasons stated herein, we affirm its judgment.

## Background

Appellee Eben Ezer Lutheran Housing Center ("Eben Ezer") is a nonprofit corporation which owns and operates the housing project at issue, commonly known as the Tabor Apartments ("Tabor"). Helen Herrboldt is the assistant managing agent of Tabor Apartments, Robert Herrboldt is the managing agent of Tabor and the remaining appellees are the members of the board of directors of Eben Ezer.

Tabor is a thirty-unit, three story apartment building which houses the elderly and the mobility impaired, offering federally subsidized rent and minimal services which enable its tenants to live independently. Tabor received development financing from HUD, pursuant to § 202, and tenant rent subsidy funding pursuant to § 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f. Tabor opened for occupancy on February 15, 1984.

The creators of Tabor sought to build housing exclusively for the low income elderly; they agreed to include the mobility impaired in compliance with HUD's "Minimum Property Standards for Multifamily Housing," HUD Document 4910.1 (1984), which requires that 10 percent of the units, as well as the common areas, contain physical design features to permit residency by

mobility impaired individuals. They consistently requested of HUD that Tabor be permitted to serve only the elderly or mobility impaired.

Appellants Ardis Knutzen and Melinda Nelson are handicapped and/or disabled individuals, as that term is defined in the HUD Occupancy Handbook, Dep't. of Housing & Urban Development, Handbook 4350.3, Occupancy Requirements of Subsidized Multifamily Housing Programs (November, 1981) ("Handbook 4350.3"), and the regulations for § 202, 24 C.F.R. § 885.-5. Both are under 62 years of age and suffer from mental impairments; Ms. Knutzen also has physical impairments, although she is not mobility impaired. Appellant Dorotea Herrera is handicapped and/or disabled as that term is defined, HUD Handbook 4350.3, § 2.3 and 24 C.F.R. § 885.5, within the definition of developmental disability because her disability is attributable to epilepsy.

At the time Tabor opened for occupancy on February 15, 1984, its tenant selection criteria had not been approved by the regional HUD office, as required by 24 C.F.R. § 277.8. However, its proposed criteria limited eligible occupants to the elderly and the mobility impaired.

On March 6, 1984, Ms. Nelson moved into Tabor. Ms. Knutzen submitted a written application for admission to Tabor on March 14, 1984. She believed that the appellees were discriminating against her in processing her application because of her handicap and filed this lawsuit alleging the same, on April 6, 1984. The District Court issued a temporary restraining order on that date and subsequently issued a preliminary injunction directing the appellees to identify a unit suitable for Ms. Knutzen at Tabor and to set it aside for her. Consequently, on April 23, 1984, the appellees accepted Ms. Knutzen as a tenant; she moved into Tabor on April 24, 1984.

Both Ms. Nelson and Ms. Knutzen claim that while living at Tabor, the appellees discriminated against them and harassed them because of their handicaps to the point where they felt they could no longer live there. Ms. Nelson moved out of Tabor in August, 1984, and Ms. Knutzen left Tabor on September 1, 1984.

Appellant Herrera submitted a written application for admission to Tabor in April, 1984. She argues that the appellees discriminated against her because of her handicap, and initially denied her admission to the project on the false pretext that no units were available. Although the appellees informed Ms. Herrera of a vacancy in September, 1984, Ms. Herrera was unable to move to Tabor at that time.

Throughout this period, Ms. Knutzen continued her discrimination suit. Ms. Nelson and Herrera intervened in December, 1984.

In August, 1984, the regional HUD office rejected the appellees' tenant selection criteria, ruling that Tabor must consider all handicapped persons for admission; but in January, 1985, the regional HUD office reversed itself, approving appellees' original tenant selection criteria which categorically excludes the non-elderly, non-mobility impaired handicapped.

Appellants contend that, with the approval of this admissions policy, appellees' discrimination has merely become overt. They argue that their current housing constitutes a hardship to them and they would like to reside at Tabor where they would benefit from the services and the subsidized rent.

### Section 202 of the National Housing Act of 1959

Appellants argue that Tabor's now stated policy of serving only the elderly and the mobility impaired is not authorized by § 202 and is therefore improper. In light of the purpose, language and administrative interpretation of § 202, we must disagree.

Section 202 is a loan program designed to enable non-profit, limited-profit or public agency sponsors to construct low cost housing which must also provide services necessary to facilitate the independent living of its tenants. 12 U.S.C. § 1701q(a)(2). The Act authorizes HUD to make long-term, low-interest rate loans to any sponsor or developer who shows that it is otherwise

"unable to secure the necessary funds from other sources upon terms and conditions equally as favorable" as those provided by the program. 12 U.S.C. § 1701q(a)(2). Furthermore, sponsors must supply services for their tenants, commensurate with their needs, and must do so at their own expense. 12 U.S.C. § 1701q(f).[2]

A sponsor may apply to HUD to receive, on behalf of eligible low income tenants, rent subsidy payments pursuant to § 8 of the United States Housing Act of 1937. 12 U.S.C. § 1701q(g).[3]

The purpose of § 202 is to assist these sponsors in providing "housing and related facilities for elderly or handicapped families." 12 U.S.C. § 1701q(a)(1). Thus, only the elderly and the handicapped are eligible for residency in § 202 housing. HUD has determined that within these general categories are four general groups of eligible § 202 tenants: the elderly, the physically handicapped, the chronically mentally ill and the developmentally disabled. Dep't. of Housing & Urban Development, Handbook 4571.1REV2, Section 202 Direct Loan Program for Housing for the Elderly or Handicapped Processing Handbook (March 1983) ("Handbook 4571.1 REV2"); Memorandum from Philip Abrams, Ass't. Sec'y. for Housing, Dep't. of Housing & Urban Development (June 7, 1983) ("Abrams Memo").[4]

The Act defines an elderly person as one who is 62 years of age or older. 12 U.S.C.

§ 1701q(d)(4). It further states that a person shall be considered handicapped if such a person is found, pursuant to regulations issued by the Secretary,

> to have an impairment which (A) is expected to be of long-continued and indefinite duration, (B) substantially impedes his ability to live independently, and (C) is of such a nature that such ability could be improved by more suitable housing conditions. 12 U.S.C. § 1701q(d)(4).

Section 202 additionally provides that a developmentally disabled person shall be considered handicapped if such a person is "a developmentally disabled individual as defined in § 102(5) of the Developmental Disabilities Services and Facilities Construction Act of 1950." 12 U.S.C. § 1701q(d)(4). The definition of a developmentally disabled individual is found in that statute at 42 U.S.C. § 6001:

> (7) The term "developmental disability" means a severe, chronic disability of a person which—
>
> (A) is attributable to a mental or physical impairment or combination of mental and physical impairments;
>
> (B) is manifested before the person attains age twenty-two;
>
> (C) is likely to continue indefinitely;
>
> (D) results in substantial functional limitations in three or more of the following areas of major life activity: (i) self-care, (ii) receptive and expressive language, (iii) learning, (iv) mobility, (v) self-direction, (vi) capacity for independent

---

**2.** The services component of the § 202 program is critical and distinguishes § 202 from other HUD programs. *See, e.g.,* 42 U.S.C. § 1437. In order to participate in the program, sponsors must prove to HUD that they have the ability and capacity to provide the services for the group or groups they want to house and that their services will meet the needs of their proposed tenants. 12 U.S.C. § 1701q(f); 24 C.F.R. § 885.210.

**3.** Rent subsidy payments under § 8 are paid directly to housing sponsors in an amount representing the difference between the fair market rent for a unit and a tenant rent payment representing 30% of the tenant's adjusted income. 42 U.S.C. § 1437a. Most, if not all, of the units in § 202 projects approved since 1974 qualify for § 8 rent subsidy payments. 42 U.S.C. § 1437; 12 U.S.C. § 1701q(g); 24 C.F.R. § 885.1–885.425.

Tenants seeking admission to a § 8 project have to satisfy the low income eligibility requirements for rental assistance under § 8, as well as satisfying eligibility requirements under § 202.

**4.** We note that this handbook was first promulgated in 1978 and the appellants do not make the objection that this part of the Handbook was added in 1983. We additionally note that further breakdowns of these groups are possible, in that, for example, the elderly include both the well elderly and the frail elderly and the physically handicapped include the mobility impaired, the sensory impaired, etc., but all § 202 tenants fall into one of these four general groups. Handbook 4571.1REV2, *supra;* Memorandum from Maurice Barksdale, Ass't. Sec'y. for Housing, Dep't. of Housing & Urban Development (April 1984) ("Barksdale Memo").

living, and (vii) economic self-sufficiency; and

(E) reflects the person's need for a combination and sequence of special, interdisciplinary, or generic care, treatment, or other services which are of life-long or extended duration and are individually planned and coordinated.

The term facility for a developmentally disabled person is also codified at 42 U.S.C. § 6001; such a facility is defined as

a facility or a specified portion of a facility, designed primarily for the delivery of one or more services to persons with one or more developmental disabilities.

42 U.S.C. § 6001(7)

Although the Act specifies that these groups are eligible for § 202 housing, it does not provide that each group is eligible for every § 202 project. Neither the statute nor the regulations explicitly endorse either side's position in regard to whether sponsors may serve less than all eligible groups. However, they both contain language which supports the appellees' contention, rather than that of the appellant, that § 202 does authorize Tabor's policy of serving one or some of the eligible groups.

Both the statute and the regulations use the phrases "elderly or handicapped" and "elderly and handicapped" in the course of stating their various requirements and purposes. While tallying the number of "ands" and "ors" does not indicate whether Congress intended to permit a project to consider for admission only one or some of the eligible groups, the substance and context of the phrases indicate that it did so intend.

First, in its statement of purpose, the statute reads that it aims to assist sponsors in providing housing for elderly or handicapped families. 12 U.S.C. § 1701q(a)(1). Second, loans are available to any qualified sponsor for the provision of housing and services for "elderly or handicapped families." 12 U.S.C. § 1701q(a)(2). Third, the Act defines "housing" as structures suitable for dwelling use by either the elderly or the handicapped. 12 U.S.C.

§ 1701q(d)(1). Similarly, it defines "related facilities" as structures suitable for use by either the elderly or the handicapped. 12 U.S.C. § 1701q(d)(8).

Fourth, and perhaps most importantly, when addressing the rights and responsibilities of an individual sponsor, the statute and regulations speak of the project serving one group or the other or both, but they do not require service to both. 12 U.S.C. § 1701q(e) states:

Nothing in this section or in regulations promulgated under this section shall prevent a corporation or consumer cooperative from obtaining a loan under this section for the provision of housing and related facilities for elderly or handicapped families ... in order to avoid hardship for the elderly or handicapped families who are the prospective tenants of such housing.

12 U.S.C. § 1701q(i)(1) addresses units which are "appropriate for the elderly or handicapped population residing in the vicinity of such project or to be served by such project."

Furthermore, the regulations require that a qualified borrower include among its purposes "the promotion of the welfare of elderly and/or handicapped families." 24 C.F.R. § 885.5. In their requirements for invitations for applications, the regulations specify that the field office should notify "groups with special interest in housing for the elderly and/or handicapped." 24 C.F.R. § 885.205(a)(4). Finally, in regard to the contents of applications, the regulations require that the sponsor describe its anticipated occupancy, designated as "elderly and/or handicapped," and they assert different requirements for projects which serve the elderly than for projects which serve the handicapped. 24 C.F.R. § 885.-210(a)(5), (23).

"It is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute." A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not

destroy another unless the provision is the result of obvious mistake or error. 2A N. Singer, *Sutherland Stat. Const.* § 46.06, p. 104, (4th ed. 1984) (citations omitted).

■ We therefore cannot ignore the use of the "or" in all of the above phrases. Moreover, unless the context or congressional intent indicates otherwise, the use of a disjunctive in a statute and regulations indicates that alternatives were intended *Reiter v. Sonotone Corp.*, 442 U.S. 330, 338–339, 99 S.Ct. 2326, 2330–2331, 60 L.Ed.2d 931 (1978); *U.S. Customs Serv. v. Federal Labor Rel. Authority*, 739 F.2d 829, 832 (2nd Cir.1984); *George Hyman Const. Co. v. Occupational Safety*, 582 F.2d 834, 840, n. 10 (4th Cir.1978); *United States v. Newman*, 405 F.2d 189, 197 (5th Cir.1968); *United States v. O'Driscoll*, 761 F.2d 589, 597 (10th Cir.1985); *United States v. Garcia*, 718 F.2d 1528, 1532–1533 (11th Cir.1983); *cf., United States v. Moore*, 613 F.2d 1029, 1040 (D.C.Cir.1979). Since neither the context of these phrases nor Congress's intent indicates otherwise, we read the above provisions to grant sponsors the choice to benefit one group, but not the other, if it so desires.

Appellants' contention that § 202 requires that all eligible groups be considered for, if not admitted to, all § 202 projects ignores the above-quoted language. To take just one example, the regulations require a potential sponsor to describe its anticipated occupancy in terms of being elderly and/or handicapped. This means that the sponsor may house the elderly exclusively, or the handicapped exclusively, or it may house both. 73 Am.Jur.2d Statutes §§ 241, 242. If appellants' reading of the statute and regulations was accurate, sponsors would not need to describe their anticipated occupancy as § 885.210(a)(5) directs because the sponsor would have to anticipate serving all eligible groups. Thus, according to appellants' construction

of the statute and regulations, § 885.-210(a)(5) is superfluous, as is "or" in the term "and/or" used throughout the regulations. In light of this, we must conclude that the plain language of the statute and regulations does not require every sponsor to serve all eligible groups, but authorizes them to serve one or some of the eligible groups.[5]

Furthermore, HUD, which administers the § 202 program, interprets the statute to afford sponsors the freedom to provide housing and services for any eligible group of their choosing, and thus are not required to serve or consider for admission members of all of the eligible groups. In memoranda issued in the springs of 1983 and 1984, successive Assistant Secretaries for Housing, Philip Abrams and Maurice Barksdale, plainly stated that all groups eligible for § 202 housing are not eligible for every § 202 project and that sponsors may choose to benefit only one group to the exclusion of other eligible groups.

While HUD's interpretation of § 202 is not binding on the court, it is entitled to some deference. The Supreme Court has ruled that where, as here, Congress has implicitly delegated to an administrative agency authority to elucidate policies or rules not directly addressed by the statute, the reasonable interpretation of the statute by the administrator of the agency is entitled to "considerable weight." *Chevron U.S.A. v. Natural Res. Def. Council*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). The amount of weight ceded to the agency interpretation is greater

> whenever decision as to the meaning or reach of a statute has involved reconciling conflicting policies, and a full understanding of the force of the statutory policy in the given situation has depended upon more than ordinary knowledge respecting the matters subjected to agency regulations (citations omitted)

---

5. We note that the specific statute and regulations to which the appellants point which use the phrase "elderly and handicapped" refer to general requirements concerning the § 202 program as an entirety. Whereas our holding is consistent with these provisions, the appellants' interpretation which construes § 202 as requiring that sponsors serve *all* groups is not consistent with some of the provisions which use "or" or "and/or", as explained above. *See* elderly and handicapped, 12 U.S.C. §§ 1701q(a)(6)(B), (i)(3), (j)(1), (k)(1).

*Id.* In earlier opinions, the Court additionally held that consistent and long-standing agency interpretations were entitled to great deference, *United States v. Clark,* 454 U.S. 555, 565, 102 S.Ct. 805, 811, 70 L.Ed.2d 768 (1982); *Morrison-Knudsen Constr. Co. v. Director, OWCP,* 461 U.S. 624, 635, 103 S.Ct. 2045, 2051, 76 L.Ed.2d 194 (1983); that greater consideration is given to agency policies rendered contemporaneously with the enactment of the statute, *Batterton v. Francis,* 432 U.S. 416, 425, n. 9, 97 S.Ct. 2399, 2405, n. 9, 53 L.Ed.2d 448 (1977); *General Electric Company v. Gilbert,* 429 U.S. 125, 141–142, 97 S.Ct. 401, 410–411, 50 L.Ed.2d 343 (1976); and that "the thoroughness, validity, and consistency of an agency's reasoning are factors that bear upon the amount of deference to be given an agency's ruling." *FEC v. Democratic Senatorial Campaign Comm.,* 454 U.S. 27, 37, 102 S.Ct. 38, 44, 70 L.Ed.2d 23 (1981).

■ In light of these considerations, the HUD memoranda are entitled to some weight, though they are not controlling. They were issued ten and nine years, respectively, after Congress amended § 202 to include the handicapped, and they were not the product of a study by HUD. However, they reasonably and accurately interpret the § 202 statute and regulations, and reflect the national HUD policy which had been in practice since HUD had been administering the program. That regional HUD offices may have contradicted this policy does not affect the substance of the national policy nor does it render the national HUD policy erratic. *See Brecker v. Queens B'Nai B'Rith Housing Dev. Fund,* 607 F.Supp. 428, 440 (E.D.N.Y.1985), *aff'd,* 798 F.2d 52 (2d Cir.1986) (hereinafter *Brecker* ).

Moreover, these memoranda explain the reasoning behind the policy and reveal it to be a reasonable reconciliation of competing interests which the program seeks to accommodate and about which HUD has specialized knowledge. According to the memoranda, the policy is based on the premise that the different groups of eligible people have different needs and that, in general, the types of necessary services correspond to the category of eligible individuals. In practical terms, this means that elderly people need different services from mentally impaired people, who need different services from developmentally disabled people, and so on. Furthermore, since § 202 requires that sponsors provide the "assured range of necessary services", 12 U.S.C. § 1701q(f), for their tenants, it follows that a project which provides these services for the elderly cannot provide the necessary services for another eligible group since their needs are different. Thus, the first interest the § 202 program seeks to serve is insuring that the tenants of the projects receive the services they need; and the policy in issue furthers this goal.

The second interest involved is helping the sponsors achieve this match between services and tenants. This requires, first, allowing the sponsor to provide as whatever services it desires as long as the tenants receive their necessary services, and second, minimizing administrative costs and frustrations so as not to deter sponsors from joining the program. The HUD policy correlates services to the category of eligible individuals and permits a sponsor to choose which group or groups it serves. Allowing sponsors to choose which group they benefit encourages sponsors with special interests in particular groups to participate in the program. This additionally encourages their participation by not forcing them to provide more services than they can afford or to serve groups for which they are not, or do not want to be, equipped. Finally, correlating eligible groups with types of services relieves the sponsor of the task of reviewing every application; it need only review those applications from the relevant group (or groups). The policy also minimizes the sponsors' responsibility to justify their admission decisions, thereby eliminating some administrative burden.

In that the Abrams and Barksdale memoranda, *supra,* reveal the policy to be a reasonable reconciliation of competing interests and one which furthers the goals of the program, they are entitled to some weight and represent national HUD policy.

As such, they support our conclusion that § 202 does authorize the Tabor tenant selection criteria which excludes some of the groups eligible for § 202 housing.

■ Appellants object to any reliance on these memoranda because, they argue, HUD failed to comply with the publication notice and comment requirements of the Administrative Procedure Act, 5 U.S.C. §§ 552, 553. Section 552(a)(1)(D) requires that an agency publish in the *Federal Register* "substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency." In practice, the courts have consistently required that agencies publish their rules and policy statements only if they constitute a change from the existing law, policy or practice. *Nason v. Kennebec County CCTA,* 646 F.2d F.2d 10 (1st Cir.1981); *Brecker,* 798 F.2d 52 (2nd Cir.1986); *Allen v. Bergland,* 661 F.2d 1001 (4th Cir.1981); *Powderly v. Schweiker,* 704 F.2d 1092 (9th Cir.1983); *Anderson v. Butz,* 550 F.2d 459 (9th Cir. 1977) *Vigil v. Andrus,* 667 F.2d 931 (10th Cir.1982); *Articles of Drug,* 634 F.Supp. 435 (N.D.Ill.1985); *Aleknagik Natives, Ltd. v. United States,* 635 F.Supp. 1477 (D.Alaska 1985); *Franklet v. United States,* 578 F.Supp. 1552 (N.D.Calif.1984).[6] As the foregoing analysis of the statute, regulations and memoranda reveals, the memoranda merely reiterate the statutory and regulatory rule that sponsors may serve one or some of the eligible groups, and thus do not constitute a change in any rule or policy of HUD's in regard to § 202.[7]

Addressing this very issue, the Second Circuit ruled that:

HUD regulations had made clear that a prospective Section 202 sponsor may apply to sponsor housing for a particular "anticipated occupancy (elderly and/or handicapped [physically handicapped or developmentally disabled . . . ])" by specifying the subclass or subclasses of eligible tenants that it wishes to serve. 24 C.F.R. § 885.210(a)(5) (as amended 1982). Further, HUD approval of an application constitutes approval of "the number and mix of units." 24 C.F.R. § 885.1(a) (as amended 1982). HUD had also required an applicant to describe "the Borrower's capability to . . . provide appropriate services in connection with housing. . . ." 24 C.F.R. § 885.210(a)(19) (as amended 1982). HUD's 1978 handbook on Section 202 contains similar provisions. For example, it expressly states that the purpose of Section 202 housing is to provide "housing *and* related facilities to serve the elderly, the physically handicapped, *or* developmentally disabled adults." HUD Handbook 4571.1 Rev, Section 202 Direct Loan Program for the Elderly and Handicapped (March 10, 1978). Since the two memoranda at issue herein did not alter HUD policy, and were thus "typical of the type of information provided in agency staff manuals," and in the applicable regulations, publication was not required. *See Donovan v. Wollaston Alloys, Inc.,* 695 F.2d 1, 9 (1st Cir.1982);

---

**6.** We note that the courts have attempted methodically to address the publication requirement of § 552 by first determining if the rule is interpretive, rather than substantive and by then applying a two step analysis to the interpretive rule to determine if it must be published. We find that this process merely asks three times whether or not the agency's statement constitutes a change in the existing law or policy. *See, e.g.,* an interpretive rule merely clarifies or explains existing law or policy without changing it. *Allen v. Bergland,* 661 F.2d 1001, 1007 (4th Cir.1981); *Powderly v. Schweiker,* 704 F.2d 1092, 1098 (9th Cir.1983); an interpretive rule need not be published if (1) only a clarification or explanation of existing law is expressed and (2) no significant impact upon any segment of the public results, *Anderson v. Butz,* 550 F.2d 459 (9th Cir.1977); a significant impact upon a segment of the public results if the agency rule or statement constitutes a change from the existing law or policy, *id.; Powderly v. Schweiker,* 704 F.2d at 1098; *Vigil v. Andrus,* 667 F.2d at 938; *Franklet v. United States,* 578 F.Supp. at 1558, 1559.

**7.** We note that HUD issued the memoranda for the purpose of correcting some misconceptions on the part of a few regional HUD offices. The national HUD policy was consistent throughout, although regional policies may have changed. These regional policies, however, do not reflect on the national policy and cannot be used to demonstrate that the national policy changed. *See also, Brecker,* 607 F.Supp. at 439–40; 798 F.2d at 57.

*accord Burroughs v. Hills,* 741 F.2d 1525 (7th Cir.1984), *cert. denied,* [471] U.S. [1099], 105 S.Ct. 2321, 85 L.Ed.2d 840 (1985).

*Brecker,* 798 F.2d at 57.

■ We are in accord with the Second Circuit and conclude as they do that HUD did not violate § 552 of the APA and the memoranda may be relied upon to the extent that we have.

Section 553(b) requires that "rule makers" publish notice of proposed rule making in the *Federal Register.* HUD need only publish rules which "affect a change in existing law or policy." *Powderly v. Schweiker,* 704 F.2d 1092, 1098 (9th Cir. 1983); *D & W Food Centers, Inc. v. Block,* 786 F.2d 751 (6th Cir.1986); *Cubanski v. Heckler,* 781 F.2d 1421 (9th Cir.1986). As we explained above, the HUD memoranda in question do not effect such a change. We, therefore, conclude once again that the Abrams and Barksdale memoranda are not in violation of the APA and may be relied upon to the extent that we have. *See also, Alcaraz v. Block,* 746 F.2d 593 (9th Cir. 1984).

Finally, appellants argue that HUD's policy is unreasonable because it is premised on inaccurate generalizations regarding the needs of the elderly and the handicapped. They contend that neither HUD nor anyone else can determine an individual's needs based on a general category into which he or she may fit.

While we appreciate the appellants' objection to and frustration with the use of generalizations about individuals, HUD's use of them in this context is not unreasonable. First, Congress, not HUD, created the categories of eligible individuals and defined them, in part, in terms of their needs. See 12 U.S.C. § 1701q(a), (d). The appellants' proper remedy lies in altering the statute itself, rather than challenging its appropriate implementation.[8] Second, the use of these categories as proxies for the types of services required does work

reasonably well. Although generalizations are bound to be under-and over-inclusive in certain situations, they are sufficiently accurate to provide the sponsor with a pool of applicants from which it can locate appropriate tenants. Third, as previously discussed, HUD's policy is reasonable because it allows sponsors with minimal administrative obstacles to benefit groups in whom they have a particular interest, and whom they believe they have the capacity and expertise to help. Fourth, the policy additionally serves the interests of the eligible groups in that it allows HUD to monitor the distribution of projects among the groups, thus helping to insure that the distribution is fair and that no group is neglected.

■ Therefore, we conclude that § 202 does authorize Tabor's categorical exclusion of the mentally impaired and developmentally disabled and that such a policy is reasonable. See also *Brecker,* 798 F.2d at 56; *Edge v. Pierce,* Civil Action No. 82–51 (D.N.J., May 22, 1984).

### Section 504 of the Rehabilitation Act of 1973

The appellants argue that the Tabor tenant selection criteria violates § 504 of the Rehabilitation Act of 1973, which provides that

No otherwise qualified handicapped individual in the United States, as defined in § 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C. § 794.

The appellants' arguments are essentially as follows: (1) They are "otherwise qualified" for admission to Tabor because they are eligible for § 202 housing and all § 202 projects must consider all individuals eligible under § 202. (2) They are otherwise qualified because the services at Tabor will

---

8. Although some members of Congress may have wanted to change the statute in accordance with the appellants' ideas, it has not yet done so. See Report on the Housing Act of 1985, House Comm. on Banking, Finance and Urban Affairs, 99th Cong., 1st Sess., Rep. No. 99–230 (July 26, 1985) at 36–37; and *Brecker,* 798 F.2d at 56, n. 6.

enable them to live independently; (3) Tabor's policy which categorically excludes the non-elderly, non-mobility impaired handicapped, excludes them solely by reason of their handicap.

■ The plaintiffs in *Brecker* asserted identical arguments which the New York District Court rejected in a well-reasoned opinion, *Brecker*, 607 F.Supp. at 435–437, subsequently adopted by the Second Circuit, *Brecker*, 798 F.2d at 57. We, too, are persuaded by the District Court's reasoning. As that court pointed out,

> plaintiffs may properly be denied admittance to (the project) because they are neither elderly nor mobility impaired. This denial does not rest on the improper grounds of discrimination because of their handicap, but rather on the basis of their lack of either of the two necessary qualifications of age (i.e., 62 or over) or mobility impairment.

*Brecker*, 607 F.Supp. at 436. Thus, appellants have not established their prima facie case under § 504 because they were not excluded solely because of their handicaps.[9]

Consideration of appellants' § 504 claim could end at this point, but three additional issues merit discussion. First, appellants' claim that § 504 requires that they be considered for admission to Tabor because they are, as handicapped adults, a group covered by § 202, "ignores the express language of § 202 which permits sponsorship of only one of the four groups covered." *Brecker*, 607 F.Supp. at 436. Furthermore, as the New York court explains, appellant's argument requires the Court to use a general civil rights statute, § 504, to "revoke or repeal § 202, a much more specific statute with an articulated program," *Id.*, in violation of "the well-settled rule of statutory construction that a general statute will not be construed so as to repeal or

revoke another more particular statute, regardless of the priority of enactment, absent express language by Congress stating its intent to revoke or repeal that statute. *Morton v. Mancari*, 417 U.S. 535 [94 S.Ct. 2474, 41 L.Ed.2d 290] (1974)." *Brecker*, 607 F.Supp. at 436. We additionally note that Congress amended § 202 expanding the benefits to handicapped individuals in 1974, the year following its passage of the Rehabilitation Act. It thus knew of § 504 and presumably wrote § 202 allowing sponsors to admit only one or some eligible groups so as not to violate § 504. *See*, 2 A N. Singer, *Sutherland Stat. Const.*, § 53.-01 (4th ed. 1984).

Second,

> accepting (appellants') argument would lead to the requirement that § 202 housing sponsors accept members from all classes covered by the statute regardless of which class or classes the sponsors had originally intended to serve. This result would be clearly contrary to case law holding that § 504 may not be used to expand the delivery of benefits awarded under another statute if that statute otherwise restricts the delivery of benefits. *See, e.g., Doe v. Colautti*, 592 F.2d 704, 708–710 (3rd Cir.1979); ... *Bernard B. v. Blue Cross and Blue Shield of Greater New York*, 528 F.Supp. 125, 129–133 (S.D.N.Y.1981), *aff'd on opinion below*, 679 F.2d 7 (2d Cir.1982); ... *Duquette v. Dupuis*, 582 F.Supp. 1365, 1369–1373 (D.N.H.1984) (fact summaries omitted).

*Brecker*, 607 F.Supp. at 436. We agree with the New York District Court that it is not discriminatory for the federal government to fund housing exclusively for the elderly, and that, as a general principle, § 504 was not intended to be used as a

---

**9.** As the appellees have stated, this would be a different case if the appellants were either elderly or mobility impaired. This point distinguishes this case from *Edge v. Pierce*, Civil No. 85–51 (D.N.J. May 22, 1984) (Decision at 16–23) wherein the New Jersey District Court found that the defendants denied the plaintiffs' admittance due to their handicaps. That court denied the defendants' motion for summary judgment on the plaintiffs' § 504 claim, finding that a question of fact remained as to whether the plaintiffs could be served by the defendants' existing program and if not, whether the program "could be modified to accommodate the plaintiffs without affecting the essential nature of the programs or burdening HUD unduly." *Id.*, at p. 22–23. We strongly agree with the appellees and emphasize that this case would be significantly different if the appellants satisfied one of Tabor's admission criteria.

"sword" with which the handicapped may carve a share from every federal benefit program. See *Id.* at 436–437.[10]

Third, in any event, appellants' demand that all handicapped individuals be considered for all § 202 projects constitutes a requested modification of the § 202 program would exceed whatever affirmative action § 504 may require. It is generally accepted that § 504 does not require a "program sponsor to modify the essential purpose of its program or undergo undue financial burdens to accommodate all handicapped persons." *Id.* at 437. *See also Southeastern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979); *Strathie v. Dep't. of Transportation,* 716 F.2d 227 (3d Cir.1983). We find that the appellants' requested relief would require the program sponsor here to modify the essential purpose of its program which is to serve the elderly and the mobility impaired.

For all of these reasons, we conclude that Tabor's and HUD's policy categorically excluding the non-elderly mentally impaired and developmentally disabled does not constitute discrimination under § 504.

**Equal Protection**

■ Appellants next argue that the Tabor tenant selection criteria violate their right to equal protection under the Fourteenth Amendment to the United States Constitution and that the District Court erred in rejecting this claim because it applied the wrong standard for review. We find that although the court errantly applied the traditional rational relation test, it nevertheless reached the correct conclusion.[11]

In *Cleburne v. Cleburne Living Center,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) hereinafter ("Cleburne"), the Supreme Court ruled that the mental impairment was neither a suspect nor a quasi-suspect classification and that, therefore, "To withstand equal protection review, legislation that distinguishes between the mentally retarded and others must be rationally related to a legitimate government purpose." *Cleburne,* at 446, 105 S.Ct. at 3258, 87 L.Ed.2d at 324. Justice Marshall, however, concurring in part and dissenting in part, noted that the Court did not apply the minimal level of scrutiny traditionally associated with the "rational relation" test. Instead, they applied what Justice Marshall termed a "second order rational basis review" whereby the Court examined the record "to determine whether policy decisions are squarely supported by a firm factual foundation." *Id.* at 458, 105 S.Ct. at 3264, 87 L.Ed.2d at 332. The court evaluated the propriety of burdening a particular class for the sake of piecemeal reform and analyzed the closeness of the fit between the legislative goals and means. See also *Coburn By and Through Coburn v. Agustin,* 627 F.Supp. 983 (D.Kan.1985).

The policy at issue allows sponsors to serve less than all of the eligible groups under § 202. It is premised on the fact that the various groups, in general, have

10. The Court recognizes that the appellants contend that these cases may not be on point because the handicapped plaintiffs in the cited cases required expanded benefits, whereas the appellants herein believe that they are not asking for any services or benefits other than those that are already provided. We believe that the appellants are underestimating the true cost of satisfying their request. First, the sponsor's administrative burden would increase since it would be required to review every applicant instead of just those of the groups eligible for its project. Second, the sponsor would then be responsible for the care of individuals with problems and potential needs for which the sponsor may not have the ability or capacity to handle. Although the appellants argue that they need nothing more than that which Tabor provides, Tabor's sponsor argues that it has no experience or expertise in serving individuals with the appellants' handicaps and is unequipped to handle potential situations which the appellants clearly do not anticipate. In that § 202 charges the sponsor with the responsibility of providing its tenants with whatever services they need, admitting individuals with conditions about which the sponsor has no expertise burdens the sponsor with a responsibility which it may not be able to bear and increases the potential that the tenant will not receive necessary services, particularly if the tenant's needs should change or increase.

11. Because we find that Tabor's policy does not violate the appellants' rights to equal protection, there is no need to address the problem of whether Tabor is a governmental actor.

correspondingly different needs. This policy is supported by the same data used by Congress to develop its statutory definitions of the different groups, which describes the handicapped and developmentally disabled in terms of the amount of care they need. 12 U.S.C. § 1701q(d)(4); 42 U.S.C. § 6001(2). Moreover, appellants' own experiences establish this point. Both appellants who had resided at Tabor actually needed more services than Tabor provided, and sought them outside of Tabor. Thus, Tabor's policy is supported by facts which show that, in general, these different groups do have different needs.

Furthermore, we do not find that this policy burdens the mentally handicapped as a class. Section 202 makes special provisions and sets aside special funds for handicapped housing in addition to the projects available under the general provision. *See* 12 U.S.C. § 1701q(h), (k). This policy does not deprive the class of handicapped individuals of 202 housing; rather, it works to ensure that tenants are provided with the necessary services and it works to encourage sponsors to participate in the program by assuring them that they will not be compelled to provide more extensive or different services than they choose. Section 202 housing is available for the mentally handicapped, but they must share this housing program with the other eligible groups. All of these groups are subject to the same potential restriction (or discrimination, in appellants' terms) that not all projects are open to all eligible groups. This policy does not burden one class more than any other.

Finally, as has been previously discussed, the legislative goal of establishing housing which provides the elderly and handicapped with an assured range of necessary services is served reasonably well by allowing a sponsor to admit whichever group or groups it chooses. In addition to encouraging sponsors to participate in the program and matching tenants with appropriate services, the policy also enables HUD to monitor the distribution of services among the eligible groups. Therefore, even under this "second order" rational basis review, Tabor's policy does not violate the appellants' rights to equal protection.

**Mootness**

Appellees have raised the objection that the appellants' claims are moot because Tabor had considered them for admittance and had admitted them, but that the appellants chose not to stay at Tabor. The appellees argue, in effect, that the appellants' claims are moot because Tabor voluntarily ceased its alleged discriminatory conduct. We find, however, that although the appellees did grudgingly admit the appellants, it does not moot the appellants' claims. The appellants correctly argue that a case is not moot if the appellees fail to demonstrate that "there is no reasonable expectation that the wrong will be repeated." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed.2d 1303 (1968). And, as the Supreme Court has stated, "The burden is a heavy one." *Id.* Here, there is every expectation that the "wrong" will be repeated, because less than one year after the appellees' supposed voluntary cessation of its alleged discriminatory conduct, it obtained HUD approval for and enacted a policy which codified the very conduct to which the appellants originally objected. Moreover, appellants claim they would still like to reside at Tabor, yet if they should apply again they will be denied consideration for the same allegedly discriminatory reason. In this way, the "wrong" may be reasonably expected to be repeated and the appellants' claims are not moot. *See also, City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, 102 S.Ct. 1070, 1074, 71 L.Ed.2d 152 (1982); *Blinder, Robinson Co., Inc. v. U.S.S.E.C.*, 692 F.2d 102, 106 (10th Cir.1982).

Appellants also have a strong argument that the appellees never truly ceased the "discriminatory" conduct, but that the discrimination merely changed form. Although Ms. Nelson and Ms. Knutzen did reside at Tabor for some months, they claim that the appellees harrassed them, treated them unkindly and humiliated them because of their handicap such that they consequently felt that they could no longer

live there and so moved out. Thus, the appellees never actually did cease their objectionable conduct and the appellants' claims are not moot. *See*, 13A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* Sec. 3533.5, pp. 324–325 (1985).

**Indispensible Party**

■ The appellees have raised, also for the first time on appeal, their objection pursuant to Fed.R.Civ.P. 19(a) that HUD is an indispensible party to this dispute. We find, however, that the purpose of Rule 19 has been fulfilled in this case without compelling HUD to be joined. As Wright, Miller and Kane have observed,

> There is no precise formula for determining whether a particular nonparty must be joined under Rule 19(a). The decision has to be made in terms of the general policies of avoiding multiple litigation, providing the parties with complete and effective relief in a single action, and protecting the absent persons from the possible prejudicial effect of deciding the case without them.

7 C. Wright, A. Miller & Kane, *Federal Practice and Procedure* Sec. 1604, p. 40 (1986). To this, Professor John W. Reed has added consideration for "the social interest in the orderly, expeditious administration of justice." Reed, *Compulsory Joinder of Parties in Civil Actions*, 55 Mich.L.Rev. 327, 330 (1957); *See also, Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968).

In this case, the merits of the case have been argued and considered concurrently with the contention that HUD is an indispensible party. Since our conclusion on the merits upholds HUD's interpretation of Sec. 202 and denies the appellants relief, it would be nonsensical to compel HUD's joinder at this late date which will only yield more arguments in favor of a position we have already considered and adopted. By this opinion, HUD's interest has been protected, the defendants/appellees do not face repetitive litigation, the plaintiffs/appellants have not been denied complete relief and the social interest in orderly and expeditious justice has been served. The purpose of Rule 19(a) has been fulfilled, and we find that HUD is not an indispensible party to this litigation.

**Conclusion**

We conclude that Tabor's tenant selection criteria is authorized by Sec. 202 of the National Housing Act of 1959, does not discriminate in violation of Sec. 504 of the Rehabilitation Act of 1973, and does not violate the appellants' rights to equal protection of the law. We therefore affirm the District Court's order granting the appellees' motion for summary judgment and denying the appellants' motion for partial summary judgment.